TIMOTHY WENDELL GRIMALDI, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 6982

February 6, 1974                                    518 P.2d 615

---

*Jerrold Courtney* and *Don Ashworth*, of Las Vegas, for Appellant.

*Robert List*, Attorney General, Carson City; *Roy A. Woofter*, District Attorney, and *Charles L. Garner*, Chief Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

Timothy Wendell Grimaldi, sentenced to life imprisonment without possibility of parole for the murder of a taxicab driver in Clark County, appeals his conviction on several grounds but principally because neither the trial court nor the prosecutor caused the jury to be instructed that it was part of the jury function to decide the voluntariness of Grimaldi's written confession. In appropriate pretrial proceedings the court ruled the confession was freely and voluntarily given but the jury was not called upon to pass on that question. Failure to instruct them to do so was error. Whether the error is harmless is the principal focus of this appeal.

Other questions for appellate review are that the court failed to instruct the jury on the concept and application of "diminished responsibility" and the contention that Grimaldi was arrested without probable cause and that evidence obtained as a result thereof including the confession is the fruit of the poisonous tree and inadmissible.

1.   In the case of Carlson v. State, 84 Nev. 534, 445 P.2d 157 (1968), Nevada adopted the Massachusetts rule regarding the admissibility of confessions. According to that rule the trial judge first hears the evidence of voluntariness and if the court finds it was voluntary, then the jury is instructed that it must also find that the confession was voluntary before it may be considered.

Some errors are harmless and will not warrant reversal. The federal harmless error rule found in 28 U.S.C. § 2111 and Nevada's harmless error statute, NRS 178.598, are very similar. The latter provides that any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

There is no constitutional requirement that both judge and jury pass upon the admissibility of evidence even though constitutional grounds are asserted for excluding it. Lego v.

Twomey, 404 U.S. 477, 490 (1972); see also page· 489, citing therein Jackson v. Denno, 378 U.S. 368 (1964). The due process mandate of the 14th Amendment requires only a judicial scrutiny on voluntariness of a confession before it can be admitted into evidence. No obligation is imposed to have a jury as well as the court pass upon the issue by constitutional right. State v. Hampton, 294 A.2d 23, 31 (N.J. 1972). The error therefore not being one of constitutional dimension whether or not the harmless error rule applies is a state question because it involves only an error of state procedure or state law. Chapman v. California, 386 U.S. 18 (1967).

The question of guilt or innocence in this case is not a close one. The facts are as follows:

Grimaldi and John Michael Tiffany hailed a Yellow Cab driven by Glen Wood Kelley at 1:30 in the early morning of New Year's Day, 1971, while outside a tavern ostensibly intending to hitchhike to Arizona after attending a New Year's Eve party. Part of their gear included a shotgun, pistol, a knife and some ammunition. Near Henderson they ordered the cab to stop and Kelley to get out of the cab. While Grimaldi stayed at the cab, Tiffany, with Kelley pleading for his life, pulled the trigger of the pistol six times, but it failed to fire. Without going into further details whether it was Tiffany or Grimaldi who then cut Kelley's throat with the knife it is enough to know that it was done. Then when Kelley tried to struggle with Tiffany, he was shot three times, once in front and twice in his back, from the shotgun.

The two drove the cab ultimately through the Nevada-Arizona border point of entry without stopping. They were arrested by a Kingman police officer at a gas station just outside Kingman. From the moment of arrest they were treated with due deference by law enforcement officers, including an FBI agent. On several occasions in Kingman the Miranda warnings were given them. Grimaldi admitted that he was fed when hungry, slept several times, was rested and in no way maltreated. His claim of false inducement consists of his unsupported statement that one of the officers told him he'd only be charged with involuntary manslaughter if he confessed, that another officer said that he'd be held alone in a room to rot if he didn't confess.

Even though Grimaldi passed the sanity tests of knowing the difference between right and wrong and being able to assist in his own defense his mental instability is apparent throughout

the record. There is simply no doubt his accusations did not and could not stand up before the jury any more than they did before the judge. Other than his rambling comments there is no proof or suspicions that his accusations against the officers are true. He testified at the trial—the jury had ample opportunity to adjudge his credibility. He was there for the jurors to see and evaluate. The proof against him was so great that the confession could not have altered or affected the result of the trial.

After all, he and Tiffany, 17 and 18 years old at the time, had driven through the port of entry without stopping as required, were in possession of a marked Yellow Cab, neither was in the uniform of a cab driver and they were in possession of three dangerous weapons at the time of their arrest. From that point it was not difficult for the authorities to trace ownership of the automobile bearing Nevada license plates, learn of Kelley and discover his murder. Witnesses included their companions at the New Year's Eve party where possession of the weapons was established as well as their expressed intentions; the taxicab company personnel who presented the information of Kelley's pickups and deliveries on the night he disappeared and then his disappearance; and evidence from the crime itself that led to the shotgun found in the possession of Tiffany and Grimaldi.

Because someone in the functional process of a trial has erred is not sufficient reason to overload the judicial process or punish the taxpayers. We will not automatically mandate a new trial without regard to the circumstances despite citations to the contrary. Cf. State v. Pulliam, 349 P.2d 781 (Ariz. 1960). The point has been well made that certain safeguards must be observed, such as the rules of arrest, search and seizure, jury selection and the taking of admissions and confessions. Almost without exception law enforcement officers and prosecutors have accepted and are adhering to those rules. They were so respected in this case that only Grimaldi's unsupported statements would say otherwise. Given a state of facts where the issue of voluntariness, or guilt, is doubtful failure to afford the jury the opportunity to pass on that question will risk reversal but such facts are not present in this case.

We do not dispute Chief Justice Thompson when he states in his dissent that when a confession is in fact coerced the case must be reversed. Grimaldi, however, does not show that the

confession was anything but voluntary. He only says it was. The facts contradict him.

There is fault in the failure of the court to complete the requirement that the jury pass judgment on the voluntariness of the confession, but we refuse to adopt a hard attitude that will bring unnecessary expense to the community over this trial court error. The "totality of the circumstances" announced in Chief Justice Thompson's authorities from the U.S. Supreme Court do not show fraud, undue influence or coercion in the taking of Grimaldi's confession nor doubt of his guilt for the crime.

2. Grimaldi's sanity for the purposes of his capacity to assist in his defense was tested and upheld. The discussion of his diminished responsibility is inappropriate. Fox v. State, 73 Nev. 241, 316 P.2d 924 (1957).

3. Grimaldi contends there was absence of probable cause to arrest him for carrying a concealed weapon. Grimaldi and his associate, Tiffany, were arrested by officer Freed who had been radioed to track them down because they had come through the inspection station and port of entry at the Nevada-Arizona border without stopping. When they stopped at a gas station on the outskirts of Kingman, officers Freed and Mosqueda of the Kingman Police Department were directed to stop the vehicle, check it out and return it to the port.

Officer Freed approached the taxi that Grimaldi and Tiffany had appropriated after the driver was killed. As Freed approached he saw Grimaldi in the back seat make a motion toward the seat. Freed stepped behind the gas pump and asked the two to get out, which they did. Freed then observed a pistol where Grimaldi had been sitting and the knife near Tiffany. A shotgun was on the rear floor of the cab. Freed arrested Grimaldi and Tiffany on charges of carrying a concealed weapon, advised them of their Miranda rights and took them to jail.

The issue of probable cause for the arrest depends upon the circumstances existing at the time the arrest was made. Nootenboom v. State, 82 Nev. 329, 418 P.2d 490 (1966). Probable cause sufficient to arrest for several offenses existed here. Appellant's objections that the arresting officer told him that he was being arrested for carrying concealed weapons is not well-founded.

Affirmed.

GUNDERSON and BATJER, JJ., concur.

THOMPSON, C. J., with whom MOWBRAY, J., agrees, dissenting:

The failure of the trial court to allow the jury to decide whether the defendant's confessions were freely and voluntarily given should be deemed prejudicial error. Indeed, every jurisdiction which follows the Massachusetts Rule in the handling of confessions holds that the failure to instruct the jury that it must decide whether the confessions were voluntary, and to disregard them if it determined that they were not voluntarily given, is reversible error. State v. Pulliam, 349 P.2d 781 (Ariz. 1960); United States v. Inman, 352 F.2d 954 (4th Cir. 1965); State v. Brewton, 395 P.2d 874, 879 (Ore. 1964); People v. Huntley, 204 N.E.2d 179 (N.Y. 1965); People v. Mials, 278 N.Y.S.2d 1020, 1022 (Sp. Ct. N.Y. 1967); People v. Bevins, 351 P.2d 776, 779–80 (Cal. 1960); State v. Breaker, 136 N.W.2d 161 (Neb. 1965). The defendant need not request such instruction. The court must give it sua sponte. State v. Pulliam, supra; People v. Mials, supra; State v. Breaker, supra; People v. Bevins, supra; United States v. Inman, supra.

Confessions possess a shattering force. Reversal is automatic if a confession is in fact coerced. Payne v. Arkansas, 356 U.S. 560, 568 (1958); Haynes v. Washington, 373 U.S. 503 (1963); Lynumn v. Illinois, 372 U.S. 528, 537 (1963); Clewis v. Texas, 386 U.S. 707 (1967); Davis v. North Carolina, 384 U.S. 737 (1966); Spano v. New York, 360 U.S. 315 (1959). Since it is the jury, not the court, that decides the defendant's fate, it seems only fair that the defendant should have the opportunity before the jury itself to challenge his confessions. People v. Huntley, supra. His right to a jury trial on this critical issue should be preserved. State v. Brewton, supra. This court adopted the Massachusetts Rule in preference to other ways of handling confessions at trial. Carlson v. State, 84 Nev. 534, 536, 445 P.2d 157 (1968). We should not now ignore its violation as meaningless.

The defendant took the stand and testified fully. His testimony, if believed, gave the jury a basis to decide that his confessions were the product of coercion. The jury was precluded from making that decision. This, the majority calls harmless error since only the accused testified that his confessions were involuntary! Does this mean that in a criminal case the uncorroborated evidence offered by an accused need not be considered by the jury? This evaluation of evidence and of the credibility of witnesses is an activity in which this court should not indulge. In fact, it is prohibited by Nev. Const. art. 6, §

4, which declares that our appellate jurisdiction over a criminal case is limited to questions of law alone.