ROGER OBERMEYER, Appellant, v. THE STATE
OF NEVADA, Respondent.

No. 11182

March 26, 1981                              625 P.2d 95

*Morgan D. Harris,* Public Defender, Clark County, for
Appellant.

*Richard Bryan,* Attorney General, Carson City, and *Robert
Miller,* District Attorney, Clark County, for Respondent.

## OPINION

By the Court, GUNDERSON, C. J.:

A jury convicted appellant Obermeyer of first degree arson, grand larceny, malicious destruction of property, burglary, and carrying a concealed weapon. On appeal, appellant seeks to question the propriety of warrantless searches of his hotel room, Volkswagen van, and briefcase. He contends that these searches violated his Fourth Amendment rights, and that therefore the district court erred in allowing evidence thus obtained to be introduced against him at trial. In our view, to the extent the court below admitted unconstitutionally seized evidence against appellant, the error was harmless beyond a reasonable doubt. *Cf.* Chapman v. California, 386 U.S. 18, 24 (1967).

During the summer of 1977, the appellant lived in the apartment of a Ms. Daniel in Las Vegas. Ms. Daniel decided that she no longer wished to live with appellant and asked him to move. When he had gone, she locked her apartment and drove to California.

On July 30 and 31, a neighbor observed appellant inside Ms. Daniel's apartment. The neighbor also testified that, while appellant was there on July 31, she heard strange noises coming from the apartment, smelled smoke for several hours, and observed furniture, clothing, rugs and appliances being thrown out of the windows. When appellant left, she telephoned the police. In the early evening of July 31, investigating officers located appellant and arrested him for carrying a concealed

weapon.[1] Then, they had appellant's VW van towed to a police impound yard. In their booking search of appellant, they found two Hilton Hotel room keys in his pants' pocket.

Late on the night of Sunday, July 31, Ms. Daniel returned and discovered that extreme damage had been done to her apartment and belongings. Her sofa had been cut and burned. Dishes, pots, clocks, and mirrors had been destroyed. The front door and a window were broken. A closet wall was scorched. Her clothes had been doused with bleach. In addition, her jewelry, a color TV, a glass-topped dining room table and chairs, and a portable stereo had been stolen.

On Tuesday, August 2, Metro police officer Sudbury picked up Ms. Daniel and took her with him to the Hilton Hotel. They ascertained that appellant had rented room No. 1204 and that his rent was past due. Officer Sudbury and Ms. Daniel accompanied hotel security officers to room No. 1204. There, Ms. Daniel and Officer Sudbury recovered two GMC automobile keys, one gold chain necklace and a wishbone type ornament, all belonging to Ms. Daniel.

Officer Sudbury and Ms. Daniel then proceeded to the police impound yard, ostensibly to inventory the contents of appellant's van. There, in plain view, they found Ms. Daniel's stereo, some of her crystal, and a pinkslip to her car. While in the van, Officer Sudbury also found and opened appellant's briefcase, which contained an agreement executed between appellant and a private detective.

As consideration for the detective's services, the agreement listed a television set and a dining room table and chairs. Officer Sudbury and Ms. Daniel proceeded to the detective's office, and there found Ms. Daniel's missing TV and dining room ensemble. The detective, who later testifed at appellant's trial, described meeting with appellant in Ms. Daniel's apartment on July 30. He described those premises as being in a "total shambles." He also testified that he had asked appellant what had happened, and that appellant had responded: ". . . if I can't have this stuff that bitch will not get it either."

1. "[A] guest in a hotel or motel loses his reasonable expectation of privacy and consequently any standing to object to 'an unauthorized search of the premises' after his rental period has terminated. And this is true even though he may have left property in the hotel room." United States v. Jackson, 585 F.2d 653, 658 (4th Cir. 1978); United States v. Akin, 562 F.2d

[1] There appears to be no serious claim that appellant's arrest and conviction for carrying a concealed weapon is tainted by unconstitutional police action.

459, 463 (7th Cir. 1977); United States v. Parizo, 514 F.2d 52, 54–55 (2d Cir. 1975); United States v. Croft, 429 F.2d 884, 887 (10th Cir. 1970).

It stands uncontroverted that the rental period appellant contracted for with the Hilton Hotel had expired, and that rent was past due and owing when Officer Sudbury and Ms. Daniel entered room No. 1204 looking for her property. Consequently, appellant then had no reasonable expectation of privacy concerning the hotel room. Thus, it seems clear that property found there was lawfully seized.

2. "The police officer, when there is just cause, has a duty not only to impound a car from the public highway for its own protection, but also to inventory the contents so that they may be safeguarded for the owner." Heffley v. State, 83 Nev. 100, 103, 423 P.2d 666 (1967). Further, in the instant case, we do not believe obligation to conduct such an inventory was negated merely because a likelihood existed that some property in need of protection might belong to Ms. Daniel, rather than appellant.

Hence, in our view, the district court was not constrained to find that the recovery of Ms. Daniel's property from appellant's van resulted from an unduly exploratory search.

3. "[T]he warrant requirement of the Fourth Amendment applies to personal luggage taken from an automobile to the same degree it applies to such luggage in other locations. Thus, insofar as the police are entitled to search such luggage without a warrant, their actions must be justified under some exception to the warrant requirement other than that applicable to automobiles stopped on the highway. Where—as in the present case—the police, without endangering themselves or risking loss of the evidence, lawfully have detained one suspected of criminal activity and secured his suitcase, they should delay the search thereof until after judicial approval has been obtained. In this way, constitutional rights of suspects to prior judicial review of searches will be fully protected." Arkansas v. Sanders, 442 U.S. 753, 766 (1979).

Therefore, arguably, fruits of searching appellant's briefcase, including property and testimony obtained through the private detective, should all have been excluded. *See* Wong Sun v. United States, 371 U.S. 471 (1963).

4. Nonetheless, NRS 178.598 requires that, "[a]ny error,

defect, irregularity or variance which does not affect substantial rights shall be disregarded.'' NRS 177.255 provides that, "[a]fter hearing the appeal, the court shall give judgment without regard to technical error or defect which does not affect the substantial rights of the parties." Where a constitutional error has been committed, a conviction of guilty may be allowed to stand if the error is determined to be harmless beyond a reasonable doubt. Allen v. State, 91 Nev. 78, 81, 530 P.2d 1195 (1975); cf. Hendee v. State, 92 Nev. 669, 670, 557 P.2d 275 (1976). In this case, as to all of the Information's several counts, it appears "that the 'minds of an average jury' would not have found the State's case significantly less persuasive had the [evidence derived from searching appellant's briefcase] been excluded." Schneble v. Florida, 405 U.S. 427, 31 L.Ed.2d 340, 345 (1972).

As to Count V, which alleges burglary, for example, the testimony of Ms. Daniel's neighbor convincingly established that appellant had unlawfully entered Ms. Daniel's apartment; similarly, the stolen property lawfully recovered from appellant's van and hotel room clearly proved his intent to commit larceny therein. Count II, grand larceny, likewise was clearly proved by purloined property lawfully recovered from appellant's van and room. Although Count II also referred to certain items discovered in the private detective's possession, we do not believe these circumstances of recovery were crucial to the jury's deliberations. From other admissible evidence, the jury knew all property referred to in Count II had been stolen from Ms. Daniel's apartment at about the same time as those items lawfully recovered from appellant's van and room. Similarly, concerning the arson charge alleged in Count I, the neighbor's testimony established that on July 31, when the fire occurred, appellant was unlawfully in Ms. Daniel's apartment. This evidence, corroborated by appellant's possession of property contemporaneously stolen from the apartment, convincingly linked him to the arson. The State's case would not have been substantially less persuasive, without the private detective's testimony that appellant had been in Ms. Daniel's apartment destroying property on the previous day also. Id. The same may be said of Count III, the charge of malicious destruction of property.

The judgment is affirmed in all respects.

MANOUKIAN, BATJER, and MOWBRAY, JJ., and BEKO, D. J.,[2] concur.

---

[2]The Governor designated The Honorable William P. Beko, Judge of the Fifth Judicial District Court, to sit in the place of THE HONORABLE GORDON THOMPSON, Justice. Nev. Const., art. 6, § 4.