# IN THE SUPREME COURT OF THE STATE OF NEVADA

FRANCISCO URIAS-QUINTANA, AKA
FRANCISCO URIAS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 74141

**FILED**

DEC 27 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of attempted murder with the use of a deadly weapon, battery resulting in substantial bodily harm, carrying a concealed firearm, and discharging a firearm into an occupied vehicle. Eighth Judicial District Court, Clark County; Carolyn Ellsworth, Judge.

*Insufficient Evidence*

First, appellant Francisco Urias-Quintana claims that sufficient evidence does not support his conviction for attempted murder with the use of a deadly weapon. Specifically, Urias-Quintana argues that the State failed to demonstrate his specific intent to kill. "When reviewing a criminal conviction for sufficiency of the evidence, this court determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the prosecution." *Brass v. State*, 128 Nev. 748, 754, 291 P.3d 145, 149-50 (2012); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[I]t is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses." *Nolan v. State*, 122 Nev. 363, 377, 132 P.3d 564, 573 (2006) (internal quotation omitted).

18-910616

Urias-Quintana fired three rounds at a marked Las Vegas Metro Police Department (LVMPD) police car, injuring an officer's hand. During his subsequent interview, Urias-Quintana admitted several times that he intended to kill a police officer that day and was acting on that intention when he shot at the marked police car. Urias-Quintana also acknowledged that he fired multiple rounds because he realized that he had missed his target. At trial, the State presented portions of Urias-Quintana's videotaped confession and several witnesses who identified him. Thus, there was sufficient evidence for a rational trier of fact to find Urias-Quintana guilty beyond a reasonable doubt of attempted murder with the use of a deadly weapon based upon Urias-Quintana's confessions and eyewitness testimony. *See Brass*, 128 Nev. at 754, 291 P.3d at 149-50.

*Miranda Waiver*

Second, Urias-Quintana challenges the admissibility of his confession, claiming that he did not knowingly and voluntarily waive his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), because he did not know that the charge of attempted murder made him ineligible for juvenile adjudication pursuant to NRS 62B.330(3)(a).[1] Urias-Quintana did not present this issue to the district court so we review his claim for plain error. *Martinorellan v. State*, 131 Nev. 43, 48, 343 P.3d 590, 593 (2015). Plain error review considers "whether there was error, whether the error was plain or clear, and whether the error affected the defendant's substantial rights." *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003) (internal quotations omitted). "[R]eversal for plain error is only warranted if the error is readily apparent and the appellant demonstrates that the error was

---

[1]Urias-Quintana was 17 years old at the time of his offense.

prejudicial to his substantial rights." *Martinorellan*, 131 Nev. at 49, 343 P.3d at 593.

*Miranda* operates as a procedural safeguard to ensure that suspects are reasonably informed of their constitutional right against self-incrimination. *Florida v. Powell*, 559 U.S. 50, 59 (2010). One may waive their rights under *Miranda* if the waiver is made voluntarily, knowingly, and intelligently. *Mendoza v. State*, 122 Nev. 267, 276, 130 P.3d 176, 181 (2006). Further, only voluntarily and freely given confessions are admissible. *Passama v. State*, 103 Nev. 212, 213, 735 P.2d 321, 322 (1987).

This court looks to the totality of the circumstances and the impact those circumstances placed upon the accused's free will when determining the voluntariness of a confession. *Id.* at 214, 735 P.2d at 323. This court will consider the accused's youth, the length of the accused's detention, the nature and form of questioning, the lack of advisement of the accused's constitutional rights, the accused's lack of education or low level of intelligence, and the use of physical force or punishment against the accused. *Id.* Additionally, when a minor makes the confession, the court will consider the presence or absence of a parent during the interview and whether the minor was advised that he might be tried in adult court. *See Quiriconi v. State*, 96 Nev. 766, 771, 616 P.2d 1111, 1113-14 (1980); *see also Elvik v. State*, 114 Nev. 883, 890-91, 965 P.2d 281, 286 (1998).

> But where the nature of the charges and the identity of the interrogator reflect the existence of an unquestionably adversary police atmosphere and the suspect is reasonably mature and sophisticated with regard to the nature of the process, resulting statements will be admissible in a criminal trial provided that the record otherwise supports a finding of voluntariness.

*Quiriconi*, 96 Nev. at 771, 616 P.2d at 1114.

Following the shooting, Urias-Quintana was taken to LVMPD headquarters and advised of his *Miranda* rights and of his right to have a parent present during his interview. Urias-Quintana declined the presence of a parent, acknowledged he understood his rights under *Miranda*, and did not invoke his right to remain silent or request an attorney. In the interview, Urias-Quintana was handcuffed, and the questioning officer identified himself as a detective before informing Urias-Quintana of his rights as a suspect and as a minor. The officer did not inform Urias-Quintana of the potential of adjudication in adult court, however, the totality of the circumstances show this was an "unquestionably adversary police atmosphere." *Quiriconi*, 96 Nev. at 771, 616 P.2d at 1114. Based on the serious nature of shooting a police officer, the circumstances surrounding Urias-Quintana's interview, and his previous arrest, Urias-Quintana fails to demonstrate his *Miranda* waiver was unknowingly or involuntarily made. Therefore, we discern no error in the admission of his confession at trial.

*Brady Violation*

Third, Urias-Quintana alleges that the State violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to inform him why a detective returned to ask whether he was motivated by outside pressure to shoot a police officer. Urias-Quintana alleges the State erred in failing to disclose that this line of questioning arose because the LVMPD received information that an inmate in county jail may have pressured Urias-Quintana into shooting a police officer.

This court reviews potential *Brady* violations de novo. *Mazzan v. Warden*, 116 Nev. 48, 66, 993 P.2d 25, 36 (2000). A *Brady* violation is composed of three parts: (1) evidence favorable to a defendant; (2) withheld

by the State; (3) that prejudices the defendant. *Id.* at 67, 993 P.2d at 37. The State must disclose all evidence favorable to the accused if the evidence is material to the accused's guilt or sentence. *Id.* at 66, 993 P.2d at 36. "[E]vidence is material if there is a reasonable probability that the result would have been different if the evidence had been disclosed." *Id.* Urias-Quintana argues that the withheld information was favorable to him and prejudicial to his case because a defense of duress could have potentially changed the outcome of his trial in that the jury may have felt sympathetic towards him if it thought he was pressured by someone else into killing a police officer.

The State did not disclose to Urias-Quintana the potential lead regarding the inmate in county jail; thus, the State withheld information. However, the withheld information was non-exculpatory and immaterial to Urias-Quintana's defense because outside pressure to kill is not a defense to attempted murder and the jury was specifically instructed not to consider its sympathy for Urias-Quintana in evaluating the State's case against him. Further, Urias-Quintana denied being pressured by someone else into killing a police officer. Accordingly, the State did not violate Urias-Quintana's *Brady* rights because the withheld information was neither exculpatory nor material to his defense.

*Jury Instructions*

Finally, Urias-Quintana claims the district court abused its discretion by denying his proposed inverse jury instructions as well as his proposed "two reasonable interpretations" jury instruction. "The district court has broad discretion to settle jury instructions, and this court reviews the district court's decision for an abuse of that discretion or judicial error." *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). This court

will do so "keeping in mind that a defendant is not entitled to misleading, inaccurate, or duplicative jury instructions." *Sanchez-Dominguez v. State*, 130 Nev. 85, 89–90, 318 P.3d 1068, 1072 (2014). A court's rejection of a "two reasonable interpretations" jury instruction is not an error so long as the jury is adequately instructed on the standard of reasonable doubt. *See Mason v. State*, 118 Nev. 554, 559, 51 P.3d 521, 524 (2002). And here, the jury was properly instructed on the standard of reasonable doubt. Accordingly, the district court did not abuse its discretion or commit judicial error in rejecting Urias-Quintana's proposed "two reasonable interpretations" jury instruction.

On the other hand, inverse jury instructions should be given when requested. *See Crawford*, 121 Nev. at 753, 121 P.3d at 588. However, a district court's refusal to instruct the jury on a defendant's proposed inverse jury instruction will not warrant reversal where the reviewing court is "convinced beyond a reasonable doubt that the jury's verdict was not attributable to the error and that the error was harmless under the facts and circumstances of [the] case." *Id.* at 756, 121 P.3d at 590. Here, Urias-Quintana's inverse jury instructions addressed the State's burden to prove each charge beyond a reasonable doubt, and the record demonstrates the jury was properly instructed on the same. There was overwhelming evidence of Urias-Quintana's guilt, and we are convinced that the district court's error in refusing the inverse jury instructions did not contribute to

SUPREME COURT
OF
NEVADA

(O) 1947A

the jury's verdict. Accordingly, this error was harmless and relief is not warranted.

Accordingly, we ORDER the judgment of conviction AFFIRMED.

_____, J.
Cherry

_____, J.
Parraguirre

_____, J.
Stiglich

cc:    Hon. Carolyn Ellsworth, District Judge
       Clark County Public Defender
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk